**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ROGER WAYNE JONES, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14CR37-1 |
| | ) | 1:16CV655 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 66), as well as his Motion for Leave to File Supplemental Brief/Pleading ("Supplement Motion") (Docket Entry 93) and second Motion for Leave to File Supplemental Brief/Pleading ("Second Supplement Motion") (Docket Entry 95).[1] For the reasons that follow, the Court should deny the Section 2255 Motion, the Supplement Motion, and the Second Supplement Motion.

**INTRODUCTION**

This Court (per now-retired United States District Judge James A. Beaty, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 204 months upon a jury's guilty verdict on a charge of possessing a firearm as a felon in violation

---

[1] Parenthetical citations refer to Petitioner's above-referenced criminal case.

of 18 U.S.C. § 922(g)(1), after which he admitted prior convictions for three violent felonies committed on different occasions within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Docket Entry 33; see also Docket Entry 1 (Indictment); Docket Entry 24 (Verdict Sheet); Docket Entry 29 (Presentence Report ("PSR")); Docket Entries 42-44 (Trial Tr.); Docket Entry 45 (Sent'g Hrg. Tr.); Docket Entry 72 (Statement of Reasons).)[2]

---

[2] The Indictment charged that, at the time Petitioner possessed a firearm, he "ha[d] three previous convictions . . . for a violent felony . . . committed on occasions different from one another" (Docket Entry 1 at 1; see also id. (citing Section 924(e))). Consistent with the Indictment, the PSR documented that Petitioner "ha[d] at least three prior convictions for a violent felony . . . *(Felony First Degree Burglary (01CRS60314), and two counts of Felony Second Degree Burglary (01CRS60383 and 01CRS60384))* which were committed on different occasions. Therefore, [he] is an armed career criminal and subject to an enhanced sentence under . . . [Section] 924(e)." (Docket Entry 29, ¶ 19 (italics in original); see also id., ¶¶ 31 (citing state court "judgment" in recording that Petitioner's first degree burglary conviction, for which he received active term of "61 to 83 months imprisonment," in case number 01CRS60314, arose from offense committed on "December 5, 2001"), 33 (citing state court "judgment[s]" in recording that Petitioner's second degree burglary convictions, for which he received two, consecutive (initially-suspended-but-ultimately-activated) terms of "15 to 18 months imprisonment," in case numbers 01CRS60383 and 01CRS6084, arose from offenses committed on "November 30, 2001" and "December 3, 2001," respectively).) Petitioner preliminarily "object[ed] to the enhancement as an Armed Career Criminal extending from the burglary convictions listed in the [PSR]" (Docket Entry 28 at 1), but abandoned that argument before sentencing (see Docket Entry 31 at 1 (conceding in sentencing position paper that Section 924(e) applied and requesting downward variance to statutory-minimum term of 180 months in prison), 6 ("When reviewing [Petitioner's] criminal history, it is easy to pinpoint the justification for the Armed Career Criminal (ACC) enhancement." (citing three burglary convictions)); Docket Entry 45 at 3 ("THE COURT: Are there any objections to the calculations in the [PSR]? [Petitioner's (continued...)

Following Petitioner's filing of Notice of Appeal (Docket Entry 34), the United States Court of Appeals for the Fourth Circuit upheld his conviction and sentence, see United States v. Jones, 611 F. App'x 116 (4th Cir. 2015);[3] see also United States v. Jones, 628 F. App'x 189 (2016) (affirming Order (Docket Entry 59), wherein Judge Beaty denied Petitioner's Motion for New Trial (Docket Entry 47) and Motion for Correction of PSR (Docket Entry 49)).[4] Petitioner thereafter timely filed the Section 2255 Motion, asserting the following grounds for relief:

1) "Suprem[e] Court Ruling [o]n the Vagueness of Residual Clause [of ACCA's Violent Felony Definition] in [] Johnson[ v. United States], [576 U.S. 591] (2015)" (Docket Entry 66, ¶ 12 (Ground One) (underscoring added); see also Docket Entry 67 at 2-6 (elaborating on Ground One); Docket Entry 69 at 1-10 (further elaborating on Ground One and citing Welch v. United States, 578 U.S. 120 (2016) (making Johnson retroactively applicable to cases on collateral review), and Mathis v. United States, ___ U.S. ___,

---

[2] (...continued)
counsel]: No, Your Honor.").) The Court (per Judge Beaty) then "adopt[ed] the [PSR] without change." (Docket Entry 72 at 1.)

[3] In doing so, the Fourth Circuit expressly held that Judge Beaty "properly concluded that the ACCA applied to [Petitioner] . . . ." Jones, 611 F. App'x at 118.

[4] Petitioner's belated challenge to his PSR concerned its reference to a witness's report to law enforcement officers that Petitioner discharged a firearm (not to his burglary convictions or his ACCA designation). (See Docket Entry 49 at 1-2.)

136 S. Ct. 2243 (2016) (applying categorical approach to determine whether state burglary conviction qualifies as burglary under enumerated offenses clause of ACCA's violent felony definition)));

2) "No Reasonable Suspicion to [S]top and Detain, No [P]robable Cause to [S]earch [T]ruck" (Docket Entry 66, ¶ 12(Ground Two); see also Docket Entry 67 at 7-12 (elaborating on Ground Two)); and

3) "No Shepard Documents [W]ere [P]resented at [S]entencing" (Docket Entry 66, ¶ 12(Ground Three) (adverting to Shepard v. United States, 544 U.S. 13 (2005) (holding that categorical approach to determination of whether state burglary conviction qualifies as burglary under enumerated offenses clause of ACCA's violent felony definition does not allow review of police report)); see also Docket Entry 67 at 12-14 (elaborating on Ground Three)).

"[P]ursuant to the General Order Governing Claims Related to Johnson . . ., the Office of the Federal Public Defender [wa]s appointed to represent [Petitioner]." (Text Order dated July 27, 2016 (underscoring added).) The United States then responded to the Section 2255 Motion (Docket Entry 73), whereupon Petitioner's counsel filed a Notice that No Reply Will Be Filed by Counsel (Docket Entry 75; see also id. at 1 ("Counsel made this determination only after a conscientious review of the matter, including all relevant pleadings, Petitioner's prior criminal record, and the applicable law."). Petitioner, however, filed a

4

pro se Reply (Docket Entry 77), and a "certified letter in lieu of a more formal final reply pursuant to Rule 5(d) of the Rule[s Governing Section] 2255 Proceedings" (Docket Entry 78 at 1), as well as a document the Clerk docketed as a "Motion to Amend" (Docket Entry 79) and a Second Amended Petition (Docket Entry 82). The Court (per United States District Judge William L. Osteen, Jr.) denied the Motion to Amend "as futile" (Docket Entry 92 at 2) and "treated [the Second Amended Petition] as a second motion for leave to amend [the] Section 2255 Motion and [denied it] as futile" (id.). Petitioner thereafter filed the Supplement Motion, seeking to "have his sentence vacated based on the new Supreme [C]ourt ruling in Rehaif v[]. United States[, 588 U.S. ___, ]139 S.[ Ct.] 914[ (2019)]" (Docket Entry 93 at 3 (underscoring added)), and the Second Supplement Motion, which likewise "[r]equest[s] to have [his s]entence vacated . . . in light of the [n]ew Supreme Court [r]uling in Rehaif" (Docket Entry 95 at 3 (underscoring added)).[5]

**DISCUSSION**

Section 2255 Motion

Ground One

Ground One of the Section 2255 Motion seeks relief based on the Supreme Court's ruling in Johnson declaring unconstitutionally vague the residual clause of the ACCA's definition of violent

---

[5] Pin cites to the Supplement Motion and the Second Supplement Motion refer to the page numbers that appear in the footers appended thereto upon docketing via the CM/ECF system.

felony.  (See Docket Entry 66, ¶ 12(Ground One); Docket Entry 67 at 2-6.)  The United States correctly has countered that – regardless of its retroactive effect as recognized in Welch – Johnson "is not a legitimate basis for granting relief because [Petitioner's] ACCA predicate convictions do not fall under the residual clause. . . . [His] three predicate convictions are for first- and second-degree burglary.  Both crimes qualify as violent felonies under the ACCA's enumerated offenses clause."  (Docket Entry 73 at 4.)

Indeed, the Fourth Circuit has deemed it beyond "dispute that [a] conviction for North Carolina second-degree burglary qualifies as a violent felony under the ACCA's enumerated crimes clause." United States v. Dinkins, 928 F.3d 349, 355 n.4 (4th Cir. 2019); see also United States v. Williams, 705 F. App'x 160, 161 (4th Cir. 2017) (holding that "North Carolina convictions for first degree burglary" remained proper ACCA predicates after Johnson and citing United States v. Mack, 855 F.3d 581, 586 (4th Cir. 2017) (ruling that North Carolina first degree burglary satisfies generic definition of burglary under Guidelines)); N.C. Gen. Stat. § 14-51 (establishing "two degrees in the crime of burglary as defined at the common law" and making occupancy of dwelling at time of offense the differentiating element).  Moreover, Petitioner's expansion of Ground One to invoke Mathis (see Docket Entry 69 at 3-8) does not alter that assessment, as the Fourth Circuit recently "conclude[d] that *Mathis* and [*United States v.*] *Stitt*[, ___ U.S. ___, 139 S. Ct.

6

399 (2018),] do not overrule [its] prior holding in [*United States v.*] *Mungro*[, 754 F.3d 267 (4th Cir. 2014),] that a conviction under N.C. Gen. Stat. § 14-54(a)[, which provides a lesser-included offense to second degree burglary, i.e., breaking and entering,] qualifies as an ACCA predicate conviction under [the enumerated offenses clause]," United States v. Dodge, 963 F.3d 379, 385 (4th Cir. 2020), cert. denied, ___ U.S. ___, 141 S. Ct. 1445 (2021); see also United States v. Bacote, 189 F. App'x 191, 193-95 (4th Cir. 2006) (describing interrelationship between breaking and entering and second degree burglary under North Carolina law). Accordingly, Ground One fails as a matter of law.

## Grounds Two and Three

Although the Section 2255 Motion does not couch Grounds Two and Three as ineffective assistance of counsel claims (see Docket Entry 66, ¶ 12(Ground One) & (Ground Two) (lacking any mention of attorney ineffectiveness)), Petitioner's contemporaneously filed memorandum clearly approaches Ground Two from that perspective (see Docket Entry 67 at 11 ("[I]t is proper to bring [Ground Two] in [the Section] 2255 [M]otion. The Supreme Court has found that an attorney's failure to bring a motion to suppress evidence may be a 6th Amendment violation of the defendants [sic] right to effective assistance of counsel."); see also id. (developing suppression-based, ineffective assistance claim)) and (more cryptically) links Ground Three to purported ineffectiveness by counsel (see id. at 14

7

("For all the foregoing reasons [showing alleged non-compliance by the Court with Shepard, Petitioner's] sentence is unconstitutional . . . . Further, because of his lawyers [sic] incompetence in this area, his sentence should be vacated.")). To prevail on such claims, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also Strickland, 466 U.S. at 694 (defining prejudice as "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Petitioner has not made the required showing as to Grounds Two or Three.

As to Ground Two, Petitioner's counsel has averred that he thoroughly considered and researched a possible suppression-based defense, but determined "a suppression motion would fail" (Docket Entry 73-4 at 2; see also id. at 3 (verifying contents of affidavit after "first being duly sworn")). "'[The] decision whether to file a pre-trial motion to suppress is a classic tactical decision.'" Lowe v. United States, Nos. 1:07CR71-2, 1:12CV1344, 2015 WL 13548371, at *2 (M.D.N.C. Nov. 23, 2015) (unpublished) (Webster, M.J.) (internal ellipsis omitted) (quoting Sexton v. French, 163

8

F.3d 874, 885 (4th Cir. 1998)), <u>recommendation adopted</u>, 2016 WL
9459828 (M.D.N.C. Jan. 5, 2016) (unpublished) (Beaty, S.J.).
"Obviously, this tactical decision made by [Petitioner's] trial
counsel cannot be second-guessed by this [C]ourt and, therefore,
[Petitioner's] trial counsel w[as] not constitutionally ineffective
. . . ." <u>Sexton</u>, 163 F.3d at 887; <u>see also</u> <u>United States v.
Sadegh</u>, No. 96-6531, 106 F.3d 394 (table), 1997 WL 20391, at *1
(4th Cir. Jan. 21, 1997) (unpublished) ("An attorney's tactical
decisions are entitled to deference and should not be second
guessed."); <u>Clozza v. Murray</u>, 913 F.2d 1092, 1100 (4th Cir. 1990)
("[Courts] cannot, in keeping with *Strickland*, second-guess
counsel's tactical choices.").

        In any event, Petitioner has not shown that (A) his counsel
acted unreasonably by opting not to move to suppress or (B) any
such motion would have altered the outcome. (<u>See</u> Docket Entry 66,
¶ 12(Ground Two); Docket Entry 67 at 7-12; Docket Entry 77 at 4-6.)
To the contrary, record facts (including Petitioner's own
allegations) foreclose any possibility that his "counsel's failure
to move to suppress . . . was deficient under *Strickland*, [as they
contradict any notion that] a motion to suppress would have had
some substance. And in connection with *Strickland*'s prejudice
prong, [the record precludes any possibility that] the underlying
claim [wa]s meritorious, [i.e.,] that a motion to suppress likely
would have been granted." <u>Grueninger v. Director, Va. Dep't of</u>

Corr., 813 F.3d 517, 530 (4th Cir. 2016) (internal citations and quotation marks omitted); <u>see also</u> <u>Lowe</u>, 2015 WL 13548371, at *2 ("[B]ecause it would have been futile to file a motion to suppress, counsel was not objectively unreasonable in declining to file one, nor was [the p]etitioner prejudiced as a result."); <u>United States v. Williams</u>, Nos. 1:12CR215, 1:14CV577, 2014 WL 5810922, at *5 (E.D. Va. Nov. 7, 2014) (unpublished) ("It was . . . a prudent tactical decision for counsel not to have wasted his or the [c]ourt's time filing a suppression motion doomed to fail.").[6]

---

[6] In that regard, Petitioner has conceded that, when police officers responded to a firearm discharge call at an apartment complex, a witness (identified by name) reported that a "man with a whit[e t]ee-shirt, [wearing] a [t]an [c]ap and driving a [b]urgundy or [r]ed truck, with a gold or silver stripe, had fired a gun at the apartments. . . . [Officers] released a 'B.O.L.O' . . . report[ing that] a white male had 'displayed a small [b]lack firearm, and described the color of the truck [in which he fled] as red or [b]urgundy with a gold or silver stripe.'" (Docket Entry 67 at 7.) Petitioner further has admitted that another officer "saw [Petitioner in a] truck and [n]oted it was similar in color [to the B.O.L.O. report]. She followed the[ truck while] . . . await[ing b]ack up . . . and [then s]topped the [t]ruck." (<u>Id.</u> (internal citation and quotation marks omitted).) According to Petitioner's own allegations, two officers "approached the [] truck and asked all three [occupants] if they had been at the [apartment complex in question]. All three responded [a]ffirmatively [and] when asked if their [sic] was a [f]irearm . . . in the [truck, they] stated 'No, [n]ot to [o]ur knowledge.'" (<u>Id.</u> (internal citation omitted); <u>see also id.</u> at 8 ("[Officers] then patted [Petitioner] and the other[ occupants] down. . . . [Officers] then proceeded to conduct a warrantless search on the truck. Behind the [b]ack seat . . ., [they] discovered a pistol . . . ."); Docket Entry 73 at 8 (documenting from trial testimony that Petitioner "was wearing a tan hat, a white shirt, and had a chain, consistent with the [witness's] description" (citing Docket Entry 42 at 90-91)).) The foregoing circumstances (i.e., an identified witness's report of an armed assailant's flight in a relatively distinctive truck, soon
(continued...)

10

Ground Three – which asserts (as a basis for invalidating Petitioner's ACCA designation) that "[n]o <u>Shepard</u> [d]ocuments were presented at sentencing" (Docket Entry 66, ¶ 12(Ground Three) (underscoring added); <u>see also</u> Docket Entry 67 at 12 ("[T]he government presented no evidence or other documents of any kind to substantiate the convictions necessary to meet a preponderance of the evidence standard.  Furthermore, the government presented no

---

[6](...continued)
located in the area and found to contain an occupant matching the assailant, who acknowledged his recent presence at the crime scene and gave an ambiguous response about firearms in the truck) easily established reasonable suspicion for the investigative stop and weapons sweep of the truck (despite any lack of corroboration at the apartment complex regarding the reported firearm discharge). <u>See</u> <u>Michigan v. Long</u>, 463 U.S. 1032, 1034-35 (1983) (confirming that, pursuant to reasonable suspicion standard adopted in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), officers carrying out investigative vehicle stop may "search[] the passenger compartment [if] they ha[ve] reason to believe that the vehicle contain[s] weapons"); <u>United States v. Foreman</u>, 369 F.3d 776, 781 (4th Cir. 2004) (explaining that "reasonable suspicion standard is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence" (internal quotation marks omitted)); <u>United States v. Perkins</u>, 363 F.3d 317, 324-25 (4th Cir. 2004) (upholding, as supported by reasonable suspicion, stop of vehicle matching description of vehicle that, according to inconclusively identified caller, transported "two males [who] were displaying and pointing rifles in various directions in a residential neighborhood"); <u>United States v. Christmas</u>, 222 F.3d 141, 144-45 (4th Cir. 2000) (finding reasonable suspicion for firearm frisk where witness reported unlawful firearm activity, noting that "face-to-face encounter" between officer and witness "provide[s officer] with an opportunity to assess [witness's] credibility," observing that, "[u]nlike the anonymous tipster, a witness who directly approaches a police officer can [] be held accountable for false statements," thereby "mak[ing] the information provided in [such] case[s] more trustworthy and reliable," and rejecting notion that lack of "knowledge of the [witness's] credibility, and . . . corroborat[ion of] her story" vitiates reasonable suspicion).

evidence to prove that the prior felonies were seperate [sic] and
distanct [sic] edisodes [sic] for A.C.C.A. purposes.")) – fares no
better. More specifically, the record flatly contradicts the basic
premise of Ground Three, as (in response to Petitioner's
preliminary objection to the PSR's finding that he qualified for
enhanced punishment under the ACCA) the United States filed copies
of proper <u>Shepard</u> documents (i.e., state court indictments and
judgments) conclusively confirming Petitioner's prior convictions
for three burglaries committed on three different dates. (<u>See</u>
Docket Entry 30-1 at 1-2 ("Judgment and Commitment" against
Petitioner in case number "01CRS060314" for "First Degree Burglary"
with "Offense Date" of "12/5/2001" imposing active prison term of
"61 months" to "83 months" on "7/9/2002" (all-caps font omitted));
Docket Entry 30-2 at 1-2 ("Judgment Suspending Sentence" against
Petitioner in case number "01CRS060383" for "Second Degree
Burglary" with "Offense Date" of "11/30/2001" imposing suspended
prison term of "15 months" to "18 months" on "7/9/2002" (all-caps
font omitted)); Docket Entry 30-3 at 1-2 ("Judgment Suspending
Sentence" against Petitioner in case number "01CRS060384" for
"Second Degree Burglary" with "Offense Date" of "12/03/2001"
imposing suspended prison term of "15 months" to "18 months" on
"7/9/2002" (all-caps font omitted)); Docket Entry 30-4 at 1-2
("Judgment and Commitment" against Petitioner in case number
"01CRS060383" for "Second Degree Burglary" with "Offense Date" of

12

"11/30/2001" activating suspended prison term of "15 months" to "18 months" on "05/08/2008" (all-caps font omitted)); Docket Entry 30-5 at 1-2 ("Judgment and Commitment" against Petitioner in case number "01CRS060384" for "Second Degree Burglary" with "Offense Date" of "12/03/2001" activating suspended prison term of "15 months" to "18 months" on "05/08/2008" (all-caps font omitted)); Docket Entry 30-6 at 1 ("Indictment" in case number "01 CRS 60314" charging "First Degree Burglary" with "Date of Offense: 12/05/2001" in that Petitioner "unlawfully, willfully and feloniously did during the nighttime break and enter the dwelling house of [an individual], located at [a particular address in] Graham, North Carolina," at which time it "was actually occupied" and "with the intent to commit larceny" (all-caps font omitted)); Docket Entry 30-7 at 1 ("Indictment" in case number "01 CRS 60383" charging "First Degree Burglary" with "Date of Offense: 11/30/2001" in that Petitioner "unlawfully, willfully and feloniously during the nighttime did break and/or enter the dwelling house of [an individual], located at [a particular address in] Burlington, North Carolina," at which time it "was actually occupied" and "with the intent to commit a felony" (all-caps font and italics omitted)); Docket Entry 30-8 at 1 ("Indictment" in case number "01 CRS 60384" charging "First Degree Burglary" with "Date of Offense: 12/03/2001" in that Petitioner "unlawfully, willfully and feloniously during the nighttime did break and/or enter the dwelling house of [an

13

individual], located at [a different address in] Burlington, North Carolina," at which time it "was actually occupied" and "with the intent to commit a felony" (all-caps font and italics omitted)).)

Given those documents, Petitioner cannot show ineffective assistance on this front, because his counsel lacked a viable basis to raise a <u>Shepard</u>-based objection to the applicability of the ACCA. See <u>Oken v. Corcoran</u>, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to object [if] . . . it would have been futile for counsel to have done so . . . ."); <u>see also</u> <u>United States v. Brewster</u>, 718 F. App'x 197, 200 (4th Cir. 2018) (determining that "even a limited temporal or geographical gap between offenses is generally sufficient to render them separate occurrences" under Fourth Circuit authority).[7]

Simply put, Grounds Two and Three lack merit.

---

[7] The <u>Shepard</u>-authorized documents in the record here, which indisputably demonstrate that Petitioner committed three burglaries on three different dates, materially distinguish this case from (and thereby render inapposite) the decisions in <u>United States v. Span</u>, 789 F.3d 320, 327 (4th Cir. 2015) (citing "discrepancies in the state court documents" in conclud[ing] that the district court clearly erred by finding that the [defendant's] predicate convictions occurred on separate dates"), and <u>United States v. Boykin</u>, 669 F.3d 467, 470-72 (4th Cir. 2012) (deeming plain error "district court['s] reli[ance] on the PSR's factual details of [the defendant's] 1980 shootings to make the judicial finding that the two shootings occurred on separate occasions for ACCA purposes," because "[t]here wa]s nothing in the record to show that the PSR's recounting of the circumstances surrounding the two 1980 convictions exist in *Shepard*-approved sources"), which Petitioner invoked to support Ground Three (see Docket Entry 67 at 13-14).

## Supplement Motion and Second Supplement Motion

Petitioner's proposed Rehaif claim likewise provides no basis for collateral relief and the Court therefore should deny as futile the Supplement Motion and Second Supplement Motion, which both seek to add such claim (see Docket Entry 93 at 1-10; Docket Entry 95 at 1-31). In route to that result, the Court first should note that habeas motions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under said rules, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1). Petitioner filed the Supplement Motion and the Second Supplement Motion long after those deadlines passed (in fact, years after he filed the Section 2255 Motion and the United States responded). (See Docket Entries 66, 73, 93, 95.) As a result, Petitioner may amend the Section 2255 Motion to add a Rehaif claim "only with the . . . written consent [of the United States] or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2).

Additionally, "[o]n motion and reasonable notice, the [C]ourt may, on just terms, permit [Petitioner] to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); see also Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002) ("A supplemental pleading differs from an amended

15

pleading because it relates to matters occurring subsequent to the filing of the initial complaint."). "This distinction [between amending and supplementing] is of little practical significance, however, because the standards used by [the C]ourt in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where good reason exists . . . ." <u>Franks</u>, 313 F.3d at 198 n.15 (internal quotation marks omitted).

The Supplement Motion and the Second Supplement Motion do not reflect written consent by the United States. (<u>See</u> Docket Entry 93 at 1-10; Docket Entry 95 at 1-31.) Petitioner thus must secure leave to amend or to supplement the Section 2255 Motion, which the Court may deny, if the record reveals, inter alia, the "futility of amendment," <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000). "Examples of futility in the habeas context include . . . procedurally barred amendments . . . ." <u>Gonzalez v. United States</u>, Cr. Act. No. 95-52, Civ. Act. No. 16-1042, 2020 WL 2813358, at *4 (D. Del. May 29, 2020) (unpublished); <u>see also</u> <u>Pittman</u>, 209 F.3d at 317 (recognizing that futility may arise due to affirmative defense); <u>United States v. Zareck</u>, Crim. No. 09-168, 2021 WL 4391393, at *73 (W.D. Pa. Sept. 24, 2021) (unpublished) ("[P]ermitting [the petitioner] to supplement his § 2255 motion would be futile because his argument asserted under <u>Rehaif</u> is procedurally defaulted . . . ."); <u>United States v. Johnson</u>, No.

16

3:17CR57, 2021 WL 4157735, at *1 (E.D. Va. Sept. 13, 2021) (unpublished) ("[T]he [c]ourt denies [the p]etitioner's [m]otion to [a]mend as futile because his proposed [c]laim [under <u>Rehaif</u>] is procedurally defaulted . . . ." (citing <u>Pittman</u>)).

In this case, a procedural bar applies to Petitioner's proposed <u>Rehaif</u> claim, thereby rendering the Supplement Motion and the Second Supplement Motion futile. In <u>Rehaif</u>, the Supreme Court ruled that, in felon-firearm prosecutions under 18 U.S.C. § 922(g), the United States "must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm." <u>Greer v. United States</u>, ___ U.S. ___, ___, 141 S. Ct. 2090, 2093 (2021) (citing <u>Rehaif</u>, 588 U.S. at ___, 139 S. Ct. at 2199-2200). Petitioner's (pre-<u>Rehaif</u>) Indictment and the instructions to the jury at his trial (given prior to <u>Rehaif</u>) did not identify knowledge of his prior felony as an element of the charged felon-firearm offense. (<u>See</u> Docket Entry 1 at 1; Docket Entry 43 at 143-48.) However, in cases such as this one, "[w]here a defendant has procedurally defaulted a claim by failing to raise it [at trial and] on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice' or that he is 'actually innocent.'" <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (internal citations omitted); <u>see also</u> <u>id.</u> at 621 ("Habeas review is an extraordinary

remedy and will not be allowed to do service for an appeal."
(internal quotation marks omitted)).[8]

Concerning "cause," Petitioner may not rely on the assumed
futility of previously raising the arguments at issue (ultimately
vindicated in Rehaif): "[W]here a constitutional claim is so novel
that its legal basis is not reasonably available to counsel, a
defendant has cause for his failure to raise the claim," Reed v.
Ross, 468 U.S. 1, 16 (1984), but, "[w]here the basis of a
constitutional claim is available, and other defense counsel have
perceived and litigated that claim, the demands of . . . finality
counsel against labeling alleged unawareness of the objection as
cause for a procedural default," Engle v. Isaac, 456 U.S. 107, 134
(1982) (footnote omitted). In Bousley, the Supreme Court further
explicated the meaning of the phrase "reasonably available" and the
concept of "futility" in the procedural default context:

> [The petitioner] argues that the legal basis for his
> claim was not reasonably available to counsel at the time
> his plea was entered. This argument is without merit.
> While we have held that a claim that "is so novel that

---

[8] Petitioner (A) did not move to dismiss his Indictment (see
Docket Entries dated Jan. 31, 2014 (date of Indictment's return) to
Aug. 22, 2014 (date of Judgment's entry)), (B) did not object to
the jury instructions on the offense elements (see Docket Entry 43
at 152-53; see also id. at 95 (documenting that Petitioner, through
counsel, demurred in response to invitation for requested
instructions)), and (C) did not move for acquittal at trial based
on insufficient evidence of knowledge of felon status (see Docket
Entry 42 at 196; Docket Entry 44 at 6-7). Petitioner's direct
appeal likewise did not challenge the adequacy of his Indictment,
the propriety of the jury instructions, or the sufficiency of the
evidence as to mens rea. See Jones, 611 F. App'x at 117-19.

18

its legal basis is not reasonably available to counsel"
may constitute cause for a procedural default, <u>Reed</u>[],
468 U.S. [at] 16[], [the] petitioner's claim does not
qualify as such. . . .   Indeed, at the time of [the]
petitioner's [conviction], the Federal Reporters were
replete with cases involving challenges [of the sort he
proposes].    [The p]etitioner also contends that his
default should be excused because . . . any attempt to
[raise this argument] would have been futile.    This
argument, too, is unavailing.   As we clearly stated in
<u>Engle</u>[], "futility cannot constitute cause if it means
simply that a claim was unacceptable to that particular
court at that particular time."   [<u>Engle</u>, 456 U.S.] at
130[] n.35[].   Therefore, [the] petitioner is unable to
establish cause for his default.

<u>Bousley</u>, 523 U.S. at 622-23 (certain quotation marks, some internal

citations, and footnote omitted).

     Courts around the nation (including in the Fourth Circuit)

have concluded that a petitioner's <u>Rehaif</u>-based "knowledge of

status" argument does not qualify as "novel" and thus does not

establish "cause" excusing default, as exemplified here:

     [N]umerous courts have opined on the "knowledge of
     status" argument [the petitioner] asserts here prior to
     <u>Rehaif</u>.   In fact, "knowledge of status" arguments have
     been a consistent feature of statutory interpretation
     cases since at least the 1950's.   In other words, [the
     petitioner]'s claim is hardly novel, either generally or
     in its particular application to the statute under which
     he was convicted.   Thus, [the petitioner]'s claim does
     not overcome procedural default based upon cause and
     prejudice, because he cannot show that his knowledge of
     status argument is sufficiently novel.

<u>Gray v. United States</u>, No. 3:19C607, 2020 WL 127646, at *3 (M.D.

Tenn. Jan. 10, 2020) (unpublished) (internal citations omitted);

<u>accord, e.g.</u>, <u>United States v. Pollard</u>, 10 F.4th 948, 952-54 (9th

Cir. 2021); <u>Slocum v. United States</u>, Nos. 2:13CR274, 2:17CV3759,

2021 WL 3706682, at *9 (S.D.W. Va. Aug. 20, 2021) (unpublished), appeal filed, No. 21-7283 (4th Cir. Sept. 7, 2021); United States v. Asmer, Crim. No. 3:16-423, 2020 WL 6827829, at *5-7 (D.S.C. Nov. 20, 2020) (unpublished), appeal dismissed, No. 21-6064 (4th Cir. Sept. 29, 2021); McCauley v. United States, No. 1:13CR423, 1:17CV666, 2020 WL 5881270, at *6-7 (M.D.N.C. Sept, 4, 2020) (unpublished), recommendation adopted, 2020 WL 5821074 (M.D.N.C. Sept. 30, 2020) (unpublished); Wilson v. United States, No. 3:14CR254, 3:19CV280, 2020 WL 4950930, at *8 (W.D.N.C. Aug. 24, 2020) (unpublished), appeal dismissed, 2020 WL 9148121 (4th Cir. Nov. 30, 2020) (unpublished); see also Cruickshank v. United States, 505 F. Supp. 3d 1127, 1133 (W.D. Wash. 2020) (citing Gray and United States v. Vasquez-Ahumada, No. 5:18CR5, 2020 WL 3213397, at *2 (W.D. Va. June 15, 2020) (unpublished), as well as rulings from courts in five other Circuits, in holding "that *Rehaif* did not create a . . . novel rule that would support a finding of cause"), appeal dismissed, No. 20-36061 (9th Cir. July 2, 2021); but see Merritt v. United States, 499 F. Supp. 3d 249, 257-62 (E.D. Va. 2020) (finding cause for default of Rehaif claim, but denying relief for want of proof of actual prejudice or actual innocence).[9]

---

[9] Conversely, any failure by Petitioner's counsel to anticipate the Supreme Court's ruling in Rehaif abrogating the Fourth Circuit's contrary holding in United States v. Langley, 62 F.3d 602, 604-08 (4th Cir. 1995), "does not constitute deficient performance under *Strickland*," United States v. Hilliard, No. 3:17CR44, 2021 WL 2369400, at *7 n.13 (E.D. Va. June 9, 2021) (continued...)

20

Nor could Petitioner carry his burden of proving actual prejudice.[10] "To show actual prejudice, [he] must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986))). These well-chosen words from a neighboring court faced with a Rehaif claim illustrate why Petitioner could not make the requisite showing:

> As the Supreme Court recently observed in *Greer*[,] in the materially analogous situation of determining whether a defendant asserting *Rehaif* error could satisfy the substantial-rights prong of the plain-error test:
>
>> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets. The simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will

---

[9](...continued) (unpublished), and thus "cannot serve as the cause [to excuse] the default of [Petitioner's] *Rehaif* claim," id.; accord, e.g., United States v. Solomon, No. 3:16CR342, 2021 WL 1124723, at *5-6 (D.S.C. Mar. 24, 2021) (unpublished).

[10] For reasons detailed above, Petitioner cannot meet the "cause" prong of the "cause and actual prejudice" exception. "Accordingly, the [C]ourt need not proceed to analyze the [actual] prejudice prong . . . . However, for the sake of thoroughness, th[is Recommendation] will proceed to consider whether, assuming arguendo [he] demonstrated cause, he can demonstrate . . . actual prejudice." Asmer, 2020 WL 6827829, at *7 (emphasis omitted).

21

usually find that a defendant knew he was a felon based on the fact that he was a felon. . . . In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a reasonable probability that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.

*Greer*, [ ___ U.S. at ___,] 141 S. Ct. at 2097.

. . . [Moreover, t]he Government's obligation to prove a defendant's knowledge of his felony status is not burdensome, as "knowledge can be inferred from circumstantial evidence." *Rehaif*, [588 U.S. at ___,] 139 S. Ct. at 2198. The Government most assuredly would have put before the jury undisputed evidence regarding [Petitioner's multiple felony] convictions . . . . Had the Government put this evidence before a jury on the missing *Rehaif* element, for which [Petitioner] had no viable defense, the jury in all reasonable likelihood would have found, on [the date he possessed a firearm], [he] knew he had been previously convicted of at least one crime punishable by a term of imprisonment exceeding one year. *See Greer*, [ ___ U.S. at ___,] 141 S. Ct. at 2097-98 (defendants' prior multiple felony convictions constituted "substantial evidence that they knew they were felons" at time they possessed firearms as alleged in federal indictments for felon-in-possession offenses).

United States v. Sumter, No. 3:02CR499, 2021 WL 3173176, at *10-11 (D.S.C. July 27, 2021) (unpublished) (some internal citations, emphasis, parentheticals, and quotation marks omitted); see also United States v. Crawley, No. 4:15CR1, 2021 WL 2910724, at *2-3 (W.D. Va. July 12, 2021) (unpublished) ("Although *Greer* articulated the threshold to show prejudice for [a] *Rehaif* error in a direct appeal under the plain-error standard, the framework is nonetheless instructive in the habeas context where [a petitioner] alleges the same error. In fact, the *actual prejudice* standard for collateral

22

attacks is a 'significantly higher hurdle than would exist on direct appeal.' . . . [P]revious felony convictions are substantially probative to prove [the knowledge of status] element [recognized in *Rehaif*] because a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. . . ." (italics in original) (internal citations and some quotation marks omitted) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982))).[11]

Should the Court elect to delve deeper into the actual prejudice issue, it should take note of Petitioner's stipulation that, "[p]rior to the date of the offense that's alleged in the [I]ndictment, [Petitioner] was convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony" (Docket Entry 42 at 194), as well as that, "[a]t the time of the instant offense, [Petitioner's] conviction had not been expunged or set aside, nor had he been pardoned or had his civil rights

_____

[11] The Second Supplement Motion appears to contend that <u>Rehaif</u> error constitutes a "structural error" which does not require inquiry into prejudice (<u>see</u> Docket Entry 95 at 20-28); however, the Supreme Court has rejected that position. <u>See</u> <u>Greer</u>, ___ U.S. at ___, 141 S. Ct. at 2099-2100; <u>see also</u> <u>United States v. Medley</u>, No. 18-4789, Docket Entry 105, at 1-2 (4th Cir. Oct. 6, 2021) (en banc) (unpublished) (disavowing decision in <u>United States v. Medley</u>, 972 F.3d 399, 415-19 (4th Cir.), <u>reh'g en banc granted</u>, 828 F. App'x 923 (4th Cir. 2020), "holding that *Rehaif* errors affecting [the defendant's] indictment and jury instructions violated his substantial rights and affected the fairness, integrity, and public reputation of judicial proceedings such that he was entitled to plain-error relief on those unpreserved claims," and instead "hold[ing] that [the defendant wa]s not entitled to plain-error relief for his unpreserved *Rehaif* claim," in light of <u>Rehaif</u>).

restored within the meaning of 18, U.S.C., Section 921(a),
Subsection 20" (id.). "Although the stipulation of a prior felony
does not automatically establish knowledge of felony status, it is
strongly suggestive of it." United States v. Ward, 957 F.3d 691,
695 (6th Cir. 2020) (internal quotation marks omitted).
Furthermore, in assessing "whether there is a reasonable
probability that, if the jury had been given the proper mens rea
instruction, [Petitioner] would have been acquitted," Greer, ___
U.S. at ___, 141 S. Ct. at 2098, reviewing courts "can examine
relevant and reliable information from the entire record –
including information contained in a pre-sentence report," id.; see
also Cousins v. Kendall, No. 8:19CV3021, 2020 WL 4340520, at *13
(D.S.C. June 1, 2020) (unpublished) ("[A] court may exercise its
discretion to expand the record when considering whether cause and
[actual] prejudice excuse a petitioner's defaulted claim."),
recommendation adopted, 2020 WL 4339050 (D.S.C. July 28, 2020)
(unpublished), appeal filed, No. 20-7231 (4th Cir. Aug. 24, 2020).
Upon doing so here, the Court quickly would find "overwhelming
evidence that [] Petitioner knew of his status as a convicted
felon." Cherry v. United States, 499 F. Supp. 3d 263, 265 (E.D.
Va. 2020), appeal filed, No. 21-6011 (4th Cir. Jan. 5, 2021).

Most notably, "the [PSR] shows that [Petitioner] ha[d] been
convicted of [three] felonies and that he ha[d] served prison
sentences exceeding one (1) year on [two] distinct occasions," id.

24

(See Docket Entry 29, ¶¶ 31 ("Felony First Degree Burglary" with term of "61 to 83 months imprisonment" imposed on "07/09/2002" and date of "02/08/2007" for "[p]aroled"), 33 (two counts of "Felony Second Degree Burglary" with consecutive suspended terms "15 to 18 months imprisonment" imposed on "07/09/2002," date of "05/08/2008" for "[p]robation revoked," and date of "07/01/2009" for "[r]eleased"); see also Docket Entry 45 at 3 ("THE COURT: Are there any objections to the calculations in the [PSR]? [Petitioner's counsel]: No, Your Honor.").) That uncontested evidence would "rebut[] any suggestion that [] Petitioner did not know of his status as a convicted felon." Cherry, 499 F. Supp. 3d at 265; see also Asmer, 2020 WL 6827829, at *10 (holding that the petitioner "[h]ad [n]ot [d]emonstrated [a]ctual [p]rejudice" as to defaulted Rehaif claim where his "PSR's criminal history section, to which [he] raised no objections, set forth three [] state court convictions for which [he] was sentenced to terms of imprisonment exceeding one year" and documented that he "served two years and nine months of imprisonment . . . for [one]" (bold font omitted)); Wilson, 2020 WL 4950930, at *8 ("[The p]etitioner cannot establish [actual] prejudice . . . because there was sufficient evidence in the record to establish that he knew his status as a felon. The PSR's criminal history section set forth multiple felony convictions for which [he] served 12 months or more in prison.").

Lastly, "[t]o establish actual innocence, [P]etitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (internal quotation marks omitted); see also United States v. MacDonald, 911 F.3d 723, 798 (4th Cir. 2018) ("[The petitioner] face[s] a daunting burden in establishing his eligibility for relief because of his actual innocence . . . ." (internal quotation marks omitted)). "[A]s previously explained, the record forecloses any plausible argument that [Petitioner] did not know he was a felon at the time he possessed the firearm as alleged in [the Indictment]. For these reasons, [he cannot] carry his burden of demonstrating he is actually innocent of [that offense and] . . . his procedural default remains unexcused." Sumter, 2021 WL 3173176, at *11 (internal citation omitted).[12]

To conclude:

> Fairly compelling evidence reflects that Petitioner knew of his felon status at the time of the firearm offense and the Government easily would have proven that fact . . . . Therefore, Petitioner cannot show any actual prejudice. This same information dispels any suggestion that [his] actual innocence could excuse his default. Accordingly, the Court [should] deny [the Supplement Motion and the Second Supplement M]otion . . . .

---

[12] As with actual prejudice, the Court properly may look beyond the trial record in assessing actual innocence. See Bousley, 523 U.S. at 623-24 (observing "that 'actual innocence' means factual innocence, not mere legal insufficiency," such that reviewing courts are "not limited to the existing record," but may consider "any admissible evidence of [the] petitioner's guilt").

26

<u>Johnson</u>, 2021 WL 4157735, at *4-5 (internal citation omitted) (citing <u>Greer</u>, ___ U.S. at ___, 141 S. Ct. at 2100).[13]

## CONCLUSION

Petitioner has not established entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 66), the Supplement Motion (Docket Entry 93), and the Second Supplement Motion (Docket Entry 95) be denied without a certificate of appealability.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

November 18, 2021

---

[13] "Even if Petitioner's <u>Rehaif</u> challenge was procedurally proper, such claim fails on the merits for largely the same reasons discussed above, with the record revealing that [any <u>Rehaif</u>] error was harmless." <u>Cameron v. United States</u>, Nos. 2:18CR8, 2:19CV691, 2021 WL 4034082, at *5 n.4 (E.D. Va. Sept. 3, 2021) (unpublished); <u>see also</u> <u>Woodruff v. Warden of Perry Corr. Inst.</u>, Civ. Action No. 9:07-2739, 2008 WL 4200291, at *5 (D.S.C. Sept. 8, 2008) (unpublished) ("[The p]etitioner's proposed new claim . . . is clearly devoid of legal merit, and allowing him leave to amend his [habeas] petition to add such a claim would be futile. Therefore, [his m]otion to [a]mend is denied."), <u>appeal dismissed</u>, 326 F. App'x 698 (4th Cir. 2009). To the extent Petitioner would assert a <u>Rehaif</u> claim premised on the allegation that no "authority[ told him] that the Federal [felon-firearm] statue [sic] even existed or that his status played a part in what he deemed to be innocent conduct" (Docket Entry 93 at 9) and/or "that he is innocent based on the maxim 'Ignorance of law' (or mistake of law)" (<u>id.</u>), the Fourth Circuit has rejected any such reading of <u>Rehaif</u>, <u>see</u> <u>United States v. Moody</u>, 2 F.4th 180, 197-98 (4th Cir. 2021).